JOHN C. BROWN (State Bar # 195804)
Redenbacher & Brown, LLP
388 Market Street, Suite 500
San Francisco, California 94111
Phone:  (415) 409-8600
Fax:  (415) 409-0600
Email: jbrown@redbrownlaw.com

Attorneys for Plaintiff, STEVEN T. KIRSCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN T. KIRSCH,<br><br>            Plaintiff,<br><br>     vs.<br><br>VISION LAB TELECOMMUNICATIONS, INC., a Florida corporation;<br>AMIN EL-GAZZAR;<br>PASQUALE GIORDANO;<br>JUDD BRAZER,<br><br>            Defendants. | C 05-02550 SBA<br><br>**COMPLAINT**<br>**(DEMAND FOR JURY TRIAL)** |

Plaintiff STEVEN T. KIRSCH alleges:

## PARTIES

1.      Plaintiff STEVEN T. KIRSCH is an adult individual resident of the County of Santa Clara, California and an individual acting on behalf of the general public.

2.      Plaintiff is informed and believes, and on that basis alleges, that defendant VISION LAB TELECOMMUNICATIONS, INC. ("VL") is a corporation organized and existing under the laws of Florida. VL's business is the provision of equipment for it and its clients to send as many as several million faxes every day. Upon information and belief, nearly all of these faxes are "junk faxes," or unsolicited advertisements for commercial products or services.  VL does regular

business in California, although it is not authorized to do business in California.

3. Defendant AMIN EL-GAZZAR is, upon information and belief, an adult individual resident of the State of Florida and is the former President and Chief Executive Officer of VL.

4. Defendant PASQUALE GIORDANO is, upon information and belief, an adult individual resident of the State of Florida and the former Chief Executive Officer of VL.

5. Defendant JUDD BRAZER is, upon information and belief, an adult individual resident of the State of Florida and the former Chief Financial Officer of VL.

## JURISDICTION AND VENUE

6. This action is filed in this Court because this Court has subject matter jurisdiction over the controversy pursuant to 28 U.S.C. §1332 in that there is complete diversity of citizenship and the amount in controversy is greater than $75,000.

7. This Court has general and specific personal jurisdiction over defendants, because defendants have engaged in substantial, continuous and systematic activities within California, and the claims in this action arise out of defendants' forum-related activities.

8. As further set out below, defendants purposefully directed their activities towards forum residents.

9. Further, during the periods that the faxes that are at issue in this matter were received, VL leased space in California where they kept hardware, a system, fax servers, machines, and computers to facilitate the delivery of faxes to persons in California and elsewhere in the United States.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a)(2) in that a substantial part of the events and/or omissions on which the claims are based occurred in this Court's district. All of the violations alleged and damages to plaintiff took place in this district, in that property belonging to plaintiff and to plaintiff's assignor was taken in this district.

11. Further, defendants regularly conduct or contract or arrange to provide

business or goods or services in this district. Further, a substantial part of the events and/or omissions occurred in the City and County of San Francisco and in the County of Santa Clara.

## GENERAL ALLEGATIONS

12. As set forth below, defendants have devised an elaborate scheme that is a subterfuge for their high degree of direct involvement in what is likely the largest junk fax operation in the United States. Over the years, defendants have claimed in response to legal threats and allegations that they are not liable for violations of federal and state laws prohibiting or restricting junk faxes, because they have little direct involvement in the actual sending of the faxes. Defendants have claimed that their clients program VL's equipment to send the junk faxes, and that their clients alone are responsible for any legal violations because defendants have no knowledge about the content of the faxes nor any other involvement with the sending of the faxes. For the following reasons, this is not true.

### DEFENDANTS' PROVISION OF FAX NUMBERS AND EQUIPMENT FOR THE SENDING OF JUNK FAXES

13. VL is a "fax broadcaster," or an entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee. 47 CFR 64.1200(f)(4).

14. VL's equipment has the capability of sending out millions of faxes every day. Defendants maintain or have maintained equipment in California and at least three other locations from which they send the faxes.

15. The vast majority of these faxes are junk faxes advertising the products and/or services of VL's clients.

16. Many of VL's clients are persons who are unaware of laws prohibiting the sending of junk faxes. Upon information and belief, defendants have a practice of advising prospective clients that there is no actual liability associated with the sending of junk faxes and that they can make junk fax recipients go away by simply ignoring them and/or that the payments of legal

damages are no more than a small cost of doing business.

17. Knowing that federal law, and many state laws, prohibit the transmission of junk faxes, defendants have devised an elaborate scheme by which they attempt to insulate themselves from legal liability for violations of laws prohibiting the sending of junk faxes.

18. First, potential clients approach defendants regarding their fax sending services. Often, these potential clients do not have access to fax numbers to which to send their advertisements.

19. Defendants provide to their clients these fax numbers from a database of millions of fax numbers they maintain.

20. Upon information and belief, defendants obtain many fax numbers via indiscriminate "war dialing" of random phone numbers. VL's equipment can thereby detect fax machines.

21. However, knowing that their direct provision to clients of these fax numbers would clearly and certainly expose them to legal liability for involvement with the sending of junk faxes, defendants set up a subterfuge by which they indirectly provide these numbers.

22. Specifically, defendants refer their clients to a Ukrainian company called Interactive Communications, Ltd. ("ICL") for provision of numbers of fax recipients. Defendants even have pre-printed forms for these referrals to ICL. Many persons sign agreements with both VL and with ICL.

23. Upon information and belief, defendants established a relationship with this judgment-proof foreign company to provide the fax numbers solely to facilitate their own attempted avoidance of legal liability for the sending of junk faxes. Otherwise, defendants would provide the numbers themselves, undermining their subterfuge they have set up to attempt to shield themselves from liability.

24. The fee that VL's clients pay ICL for fax numbers is minimal in relation to

4

the total fee for the junk fax-sending services defendants provide. ICL charges a below-market fee because the payment to it is simply a subterfuge by which defendants conceal their direct high degree of involvement in the junk fax scheme. Further, defendants know that they can make significantly more money for the actual sending of the faxes if their clients have thousands or millions of numbers to which to send them.

25. Defendants know when faxes are being sent to numbers on the ICL list, but they do not take any steps to verify that the owners of the numbers provided by ICL have given prior express consent or permission to the receipt of faxes by their clients. Defendants do not take any steps to verify that the owners of the numbers purportedly provided by ICL have any business relationship with their clients.

26. Nor, for that matter, do defendants take any steps to verify whether any other persons to whom they send faxes (with numbers from sources other than ICL) have given prior express or implied consent or permission to the receipt of faxes or have a business relationship with the fax senders.

27. After VL's clients get the fax numbers, they program VL's equipment to send the faxes to these numbers with defendants' assistance.

28. But, defendants remain involved with the junk fax sending scheme. As just one example of defendants' involvement in the sending of the junk faxes, defendants prohibit their clients from sending faxes to certain states like Nevada, Tennessee and Kansas, because those states' governmental entities are particularly aggressive in seeking to deter junk fax broadcasters such as VL.

THE CONTENT OF THE JUNK FAXES

29. Defendants primarily send junk faxes advertising one of four classes of products or services: stocks, travel packages, health care plans or insurance, and loans.

30. Many of the junk faxes have the same headers, or same styles of headers,

5

further indicating defendants' high degree of direct involvement.

31.  However, *none* of the junk faxes contain the number of the actual fax machine from which the junk fax has been sent or an identification of any defendants.

32.  In an effort to minimize their chances of being identified and held liable, defendants omit their identification information on the junk faxes.

33.  Indeed, defendants even block their caller identification information when the junk faxes are sent.

34.  This exercise of control over the content of the junk faxes and over the method of sending the junk faxes further indicates defendants' high degree of involvement with the sending of the junk faxes.

35.  Few, if any, of the junk faxes contain a true identification of the advertisers that conspire to send the junk faxes along with defendants.  Defendants know that these faxes contain no advertiser identification information, and they intentionally avoid identification because they know that the faxes are illegal and may expose them or their advertisers to legal liability.

36.  Defendants send out stock-touting faxes that are particularly troublesome. Defendants have for some time had a pattern and practice of sending out faxes that make deceptive statements about stocks, many of which, upon information and belief, are held by defendants themselves.  Defendants "pump" these stocks by making false and deceptive statements to increase their share prices.  After sending out thousands, hundreds of thousands, or even millions of such statements, defendants' clients and, upon information and belief, defendants themselves, sell ("dump") their stock shares and devalue the very stocks that they illegally advertised.  This "pump and dump" scheme is, upon information and belief, one of defendants' revenue generators.

DEFENDANTS' PROVISION OF "REMOVAL" NUMBERS FOR EACH FAX

37.  Defendants also participate in the junk fax sending scheme by providing to their clients toll-free "removal," or opt-out, numbers for placement in the junk faxes.  These

numbers allow fax recipients to call to request that they get no further unsolicited faxes.

38. Defendants provide these numbers to encourage persons to call to have their numbers removed from the database that defendants sell to their clients through ICL, as set out above.

39. Defendants will not send faxes for their clients to the "removed" numbers.

40. Just as defendants use a foreign company to indirectly provide their clients the fax numbers to which to send their advertisements, defendants use a British Virgin Island corporation called IVR, Inc. ("IVR") to subscribe to the toll free "removal" numbers for placement in the junk faxes.

41. Indeed, defendants actually receive and pay the bills or invoices for the toll-free numbers subscribed to under the name IVR, Inc.

42. Defendants created IVR to help themselves attempt to avoid the liability and the visibility of being the subscriber to the "removal" numbers associated with unsolicited faxes. In fact, defendants' inclusion of the "removal" numbers in the faxes further indicates their high degree of direct involvement with the sending of the faxes and their knowledge that the faxes are not, for example, sent to recipients who gave to their clients' direct permission or who have business relationships with their clients.

43. After VL's header format, removal recording, and removal numbers were posted by plaintiff on a public website, defendants changed their removal recording, changed some of their removal numbers, and changed their header style to use different header styles.

44. Defendants made these changes in order to make it more difficult for people to identify that the junk faxes were being sent by them. With these obfuscations, and given the fact that the faxes themselves do not identify the defendants or VL's clients, defendants furthered their attempts to avoid detection of their identity and of their legal violations.

DAMAGES CAUSED BY DEFENDANTS' SENDING OF MILLIONS OF JUNK FAXES

45. Upon information and belief, many of the fax numbers to which defendants direct their transmissions are located in residences and double as voice telephone numbers, so that fax recipients are often disturbed by defendants' junk faxes in the peace of their own home.

46. Defendants' fax broadcasting system is indiscriminate as to when it sends out the faxes. The system will fax persons very late at night or in the early morning hours in a disruptive and annoying manner.

47. Defendants' faxes tie up phone and/or fax lines and temporarily prevent the recipients' use of those lines for their desired personal and/or business purposes.

48. As further specified below, defendants' faxes consume paper, ink, toner, and/or other personal property belonging to the fax recipients.

49. VL's junk fax clients unfairly compete with other businesses that advertise in a law-abiding fashion by using the junk faxes to reach consumers at a fraction of the cost of lawful advertising.

50. Indeed, junk fax advertising passes some of the advertising costs on to fax recipients.

THE INDIVIDUAL DEFENDANTS' ACTIVE PARTICIPATION IN THE JUNK FAX SENDING SCHEME

51. Each one of the individual defendants has, or had during the time he was employed by VL, a high degree of involvement with all functions of VL.

52. Each one of the individual defendants oversees, or oversaw during the time that he was employed by VL, all functions of VL.

53. Each one of the individual defendants has, or had during the time he was employed by VL, a high degree of involvement with the transmission of faxes by VL's equipment.

54. Each one of the individual defendants oversees, or oversaw during the time

that he was employed by VL, VL's fax transmission operations.

55. Each one of the individual defendants has, or had during the time he was employed by VL, a high degree of involvement with the sending of junk faxes.

56. Each one of the individual defendants knows, or knew during the time he was employed by VL, that VL's machines sent many junk faxes. However, these individual defendants failed to stop the transmission of junk faxes despite having the ability and authority to do so.

DEFENDANTS' LEGAL TROUBLES AND AVOIDANCE OF INJUNCTION TO DATE

57. Since their inception, defendants have been well aware of federal and state laws, including the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, that prohibit the sending of junk faxes. Since at least 2001, defendants have had notice that VL's machines have been sending out faxes that violate the TCPA.

58. Other than by advising some prospective and/or actual clients of theirs that sending junk faxes may be illegal, defendants have taken no steps to stop transmissions of illegal faxes by their machines.

59. VL and some of the individual defendants have been sued for TCPA violations and are, upon information and belief, currently defending at least three TCPA cases in federal courts in New York and Washington, D.C. for their sending of junk faxes. Further, VL was cited in March 2004 by the FCC for violating the TCPA.

60. Other than this case and the other pending federal court cases, most legal actions filed against defendants have been brought by *pro se* plaintiffs who have received small numbers of faxes. Upon information and belief, defendants have simply paid these persons monies that defendants consider to be a "cost of doing business" so that they can continue to send millions of junk faxes every day with impunity.

FIRST CAUSE OF ACTION

(Violation of Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 Against All Defendants)

61. Plaintiff realleges and incorporates herein paragraphs 1 through 60, inclusive.

62. Beginning before or about June of 2002, defendants engaged in a campaign to market and sell products and/or services in Santa Clara County, San Francisco County and, upon information and belief, in other counties in the State of California and most other states in the United States.

63. Specifically, defendants sent faxes containing advertisements of the commercial availability or quality of property, goods, and/or services, without the recipients' prior express invitation or permission, to fax machines in California.

64. Defendants sent at least 220 such faxes to 650-941-0248, 650-941-1752, 650-941-1260, and 650-941-3101, the fax-capable lines of plaintiff, in Los Altos Hills, California. These faxes were sent from the period June 2002 through July 2004.

65. Defendants also sent at least 105 such faxes to San Francisco, California, to fax line 415-522-0233, which belongs to Laurie Wickett. These faxes were sent from the period October 2004 through April 2005. Plaintiff is the assignee of any and all claims based on the receipt by Laurie Wickett of unsolicited faxes at the fax line 415-522-0233 pursuant to a written "Assignment of Causes of Action" into which the plaintiff and Wickett entered on May 27, 2005.

66. Identification of the time and date of receipt of the junk faxes is difficult, because the junk faxes' time and date stamps represent the time and date in the time zone from which the faxes were sent, which could be any of several time zones, as defendants send or have sent junk faxes from locations in at least three different time zones.

67. The federal Telephone Consumer Protection Act (T.C.P.A.) of 1991 provides that "[i]t shall be unlawful for any person within the United States or any person outside the

10

United States if the recipient is within the United States to use any telephone fax machine, computer, or other device to send an unsolicited advertisement to a telephone fax machine." 47 U.S.C. § 227(b)(1)(C).  As used in 47 U.S.C. § 227, "[t]he term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission."  47 U.S.C. § 227(a)(4).

68. The T.C.P.A. further provides a private right of action, allowing one to bring an action based on a violation of the T.C.P.A. subsection prohibiting the transmission of the types of faxes that are the subject of this litigation.  The T.C.P.A. provides that one may seek an injunction and "actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater."

69. The T.C.P.A. also provides for treble damages.  "If the court finds that the defendant willfully or knowingly violated this subsection . . . the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times [the $500 damages amount]."  47 U.S.C. §227(b)(1)(3).

70. Plaintiff is informed and believes that, with respect to each violation, each defendant had actual notice of participation, or a high degree of involvement, in a plan to violate the T.C.P.A. by, as further specified above, knowing that the transmitted faxes were unlawful advertisements, by participating in preparing their content, by providing or obtaining the fax telephone number of plaintiff or other recipients, by knowing that plaintiff or other recipients had not authorized the faxes' transmission by prior express invitation or permission, and/or by failing to stop the sending of the faxes after receiving actual notice of their transmission.

71. The above-referenced actions and violations by the defendants of 47 U.S.C. §227 were willful and/or knowing and, as a result, plaintiff is entitled to treble damages for the unsolicited fax advertisements sent by defendants to plaintiff and to plaintiff's assignor.

11

Specifically, plaintiff claims damages of $1500 for the sending by defendants of each and every one of the 326 faxes sent by defendants to him and to his assignor.

72.     Plaintiff is informed and believes, and on that basis alleges, that the acts and practices described above are continuing.  On this basis, plaintiff seeks to enjoin defendants from continuing to engage in the foregoing practices and prays for the issuance of a preliminary and permanent injunction for such purpose.

73.     Further, by prosecution of this action, plaintiff expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and the attorneys' fees should not in the interest of justice be paid out of the recovery, if any.  For those reasons, plaintiff will request an award of attorneys' fees under C.C.P. §1021.5 and/or based on the fact that plaintiff will have conferred a substantial benefit on a large number of people.

WHEREFORE, plaintiff prays for judgment as set forth below.

<h3 style="text-align:center">SECOND CAUSE OF ACTION</h3>

(Violation of Federal Telephone Consumer Protection Act, 47 C.F.R. § 68.318(d) Against All Defendants)

74.     Plaintiff realleges and incorporates herein paragraphs 1 through 73, inclusive.

75.     The Federal Communications Commission implemented federal regulations pursuant to Congressional authority granted under the T.C.P.A.  Specifically, the FCC implemented 47 C.F.R. §68.318(d) regarding identification requirements.  This regulation provides that

> It shall be unlawful for any person within the United States to use a computer or other electronic device to send any message via a telephone facsimile machine unless such person clearly marks, in a margin at the top or bottom of each transmitted page of the message or on the first page of the transmission, the date and time it is sent and an identification of the business, other entity, or individual sending the message and the telephone number of the sending machine or of such business, other entity, or

individual. If a facsimile broadcaster demonstrates a high degree of involvement in the sender's facsimile messages, such as supplying the numbers to which a message is sent, that broadcaster's name, under which it is registered to conduct business with the State Corporation Commission (or comparable regulatory authority), must be identified on the facsimile, along with the sender's name.

76. None of the faxes that are the subject of this litigation included an "identification of the business, other entity, or individual sending the message."

77. None of the faxes that are the subject of this litigation included "the telephone number of the sending machine or of such business, other entity, or individual."

78. None of the faxes that are the subject of this litigation included an identification of the "broadcaster's name, under which it is registered to conduct business with the State Corporation Commission."

79. Defendants willfully and/or knowingly failed and refused to comply with these requirements.

80. Plaintiff seeks damages based on defendants' violation of this section pursuant to 47 U.S.C. §227(b), which allows one to bring an action for $500.00 for each one of the above-referenced violations specified in paragraph 68-70.  It also authorizes a fax recipient to seek treble damages for the violations based on willful and knowing violations, which damages plaintiff also seeks.

81. Plaintiff is informed and believes, and on that basis alleges, that the acts and practices described above are continuing.  On this basis, plaintiff seeks to enjoin defendants from continuing to engage in the foregoing practices and prays for the issuance of a permanent injunction for such purpose.

82. Further, by prosecution of this action, plaintiff expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons.  The necessity and financial burden of private enforcement, or of enforcement

one public entity against another public entity, are such as to make the award appropriate, and the attorneys' fees should not in the interest of justice be paid out of the recovery, if any. For those reasons, plaintiff will request an award of attorneys' fees under C.C.P. §1021.5 and/or based on the fact that plaintiff will have conferred a substantial benefit on a large number of people.

### THIRD CAUSE OF ACTION

(Conversion Against All Defendants)

83.     Plaintiff realleges and incorporates herein paragraphs 1 through 82, inclusive.

84.     Plaintiff and Wickett were the owners of personal property, namely paper and ink or toner, each of which cost money.

85.     Defendants actually interfered with the ownership by plaintiff and by Wickett of this personal property by causing their fax machines to entirely consume this paper and ink or toner by the printing of the junk faxes. As a result, plaintiff and Wickett lost the use of this paper and ink or toner forever, as the paper and ink or toner were rendered useless for any purpose other than the printing of defendants' faxes. Therefore, defendants' taking of this property damaged both plaintiff and Wickett.

86.     Defendants' taking of this property was knowing and/or intentional.

87.     As a direct and proximate result of defendants' wrongful interference with the possession of the property, plaintiff and Wickett have been damaged by the loss of use and enjoyment of the property.

88.     In doing the acts herein alleged, defendants acted with oppression and malice, entitling plaintiff to an award of punitive damages in an amount to be proven at trial.

WHEREFORE plaintiff prays for judgment as set forth below.

### FOURTH CAUSE OF ACTION

(Trespass to Chattels Against All Defendants)

89.     Plaintiff realleges and incorporates herein paragraphs 1 through 88, inclusive.

14

90. Plaintiff's fax machine is and at all relevant times hereto has been connected to a telephone line paid for by plaintiff for plaintiff's exclusive use for lawful personal or business activity. Wickett's fax machine is and at all relevant times hereto has been connected to a telephone line paid for by her for her exclusive use for lawful personal or business activity. Neither plaintiff nor Wickett has ever given defendants permission to send faxes of any kind to them.

91. In the process of the sending of the above-referenced faxes, defendants knowingly initiated the sending of electronic signals and/or facilitated the initiation of such signals from their locations directly to the fax lines at issue.

92. These signals activated the fax machines, causing them to turn on and begin using electrical energy. After turning on these fax machines, defendants deliberately transmitted unsolicited advertisements to these machines, causing the machines to print the unsolicited faxes by consuming paper and ink or toner, which were the property of plaintiff or Wickett. By doing so, defendants seized control of their fax machines and misappropriated them to their own use, thereby preventing plaintiff and Wickett from using the fax machines during this period of time.

93. Plaintiff and Wickett were damaged as a proximate result of defendants' trespass to chattels.

94. In doing the acts herein alleged, defendants acted with oppression and malice, entitling plaintiff to an award of punitive damages in an amount to be proven at trial.

WHEREFORE, plaintiff prays for judgment as set forth below.

### FIFTH CAUSE OF ACTION

(California Business & Professions Code §§17200, *et seq.* Against All Defendants)

95. Plaintiff realleges and incorporates herein paragraphs 1 through 94, inclusive.

96. As specified above, defendants have a number of unfair and/or fraudulent and/or unlawful business practices attendant with their sending of junk faxes.

97. Defendants have had and, upon information and belief, continue to have an unfair and/or fraudulent and/or unlawful business practice of randomly dialing telephone numbers to determine which ones can receive faxes so that they can add the fax-capable numbers to databases that they provide to their clients.

98. Defendants have had and, upon information and belief, continue to have an unfair and/or fraudulent and/or unlawful business practice of deceiving prospective clients as to the legality of transmitting junk faxes and/or as to their ability to do so with impunity.

99. Defendants have had and, upon information and belief, continue to have an unfair and/or fraudulent and/or unlawful business practice of failing to adequately advise prospective clients of laws prohibiting and/or restricting the sending of junk faxes in conspicuous, unambiguous terms.

100. Defendants have had and, upon information and belief, continue to have an unfair and/or fraudulent and/or unlawful business practice of referring prospective clients to a fax number provider, notwithstanding the fact that defendants know and/or should know that the prospective client plans to deliver unlawful junk faxes to the persons on this list.

101. Defendants have had and, upon information and belief, continue to have an unfair and/or fraudulent and/or unlawful business practice of transmitting junk faxes and/or allowing the transmission of junk faxes with their equipment.

102. Defendants have had and, upon information and belief, continue to have an unfair and/or fraudulent and/or unlawful business practice of transmitting junk faxes and/or allowing the transmission of junk faxes that do not contain any identification of defendants.

103. Defendants have had and, upon information and belief, continue to have an unfair and/or fraudulent and/or unlawful business practice of transmitting junk faxes and/or allowing the transmission of junk faxes that do not contain any identification of defendants' clients.

104. Defendants have had and, upon information and belief, continue to have an

unfair and/or fraudulent and/or unlawful business practice of transmitting junk facsimiles and/or allowing the transmission of junk faxes touting stocks owned by defendants themselves then selling those stocks after their transmissions impact the value of the stocks.

105.  Each of the above patterns and practices amount to unfair and/or fraudulent and/or unlawful business practices within the meaning of California Business and Professions Code §17200 *et seq*.

106.  Plaintiff is informed and believes, and on that basis alleges, that beginning at a date unknown, and continuing thereafter up to and including the date and filing of this Complaint, defendants engaged in the acts and practices described above.

107.  Plaintiff is presently unaware of all of the unfair and/or fraudulent and/or unlawful business practices that defendants engage in or have engaged in -- apart from plaintiff's experience described herein -- but expects to uncover further evidence of such practices through discovery and will seek to amend this complaint at that time.

108.  Plaintiff is informed and believes, and on that basis alleges, that as a direct and legal result of defendants' practices, plaintiff and others have suffered damages and/or losses, specifically relating to the nuisance, harassment, tying up of phone and/or fax lines, and invasion of privacy attendant with the receipt of fax calls, all to the detriment of such parties.

109.  Plaintiff is informed and believes, and on that basis alleges, that the acts and practices described above are continuing. On this basis, plaintiff seeks to enjoin defendants from continuing to engage in the foregoing practices and prays for the issuance of a permanent injunction for such purpose.

110.  The acts and practices referenced above were, and are, unfair to the general public and/or unlawful. As a direct and proximate result of defendants' unlawful and/or fraudulent and/or unfair business practices, plaintiff and many others have been damaged.

111.  On this basis, plaintiff seeks an order requiring disgorgement of monies

COMPLAINT FOR VIOLATION OF T.C.P.A., ET AL.; C 05-02550 SBA

gained by defendants as a result of their unfair and/or fraudulent and/or unlawful fraudulent practices.

112. Further, by prosecution of this action, plaintiff expects to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and the attorneys' fees should not in the interest of justice be paid out of the recovery, if any. For those reasons, plaintiff will request an award of attorneys' fees under C.C.P. §1021.5 and/or based on the fact that plaintiff will have conferred a substantial benefit on a large number of people.

WHEREFORE, plaintiff prays for judgment as set forth below.

## PRAYER

WHEREFORE, plaintiff prays for judgment against defendants as follows:

1. On the first cause of action, for general and special damages of $162,500.00, or in an amount to be proven at trial, and trebled statutory damages, for a total amount of $487,500.00;

2. On the second cause of action, for general and special damages of $487,500.00, or in an amount to be proven at trial, and trebled statutory damages, for a total amount of $1,462,500.00;

3. On the third and fourth causes of action, for general and special damages of $100,000.00 or in an amount to be proven at trial, along with punitive damages in an amount to be proven at trial;

4. On the fifth cause of action, for disgorgement of profits and restitution;

5. On all causes of action, for or an award of attorneys' fees;

6. On the first, second, and fifth causes of action, for a temporary, preliminary, and permanent injunction;

7. For an award of lawful interest on the damages;

18

COMPLAINT FOR VIOLATION OF T.C.P.A., ET AL.; C 05-02550 SBA

8.    For the costs of suit herein; and,

9.    For such other relief as the court deems just.

Date:  6/22/05                              REDENBACHER & BROWN, LLP


                                            By         \s\
                                                JOHN C. BROWN
                                            Attorneys for Plaintiff STEVEN T. KIRSCH


**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Date:  6/22/05


                                            By         \s\
                                                JOHN C. BROWN
                                            Attorneys for Plaintiff, STEVEN T. KIRSCH